UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DAVE M. PERL, KEVIN GLAVE, SCOTT FOLTZ, JOEL CONRAD, JASON TEUSCH, CURTIS STRUCKLER, and KRIS HERBST, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 1:11-CV-238 JD RBC ) |
| LAUX/ARNOLD, INCORPORATED, d/b/a L-A ELECTRIC; L-A ELECTRIC EMPLOYEE BENEFIT PROGRAM, WILLIAM ARNOLD and LISA SCHARR, Individually and in their Capacity ADMINISTRATORS of the L-A ELECTRIC EMPLOYEE BENEFIT PROGRAM; L-A ELECTRIC EMPLOYEE BENEFIT TRUST; WILLIAM ARNOLD, LISA SCHARR, BARNEY GOODWIN and KEITH KNIPSTEIN, Individually and in their Capacity as TRUSTEES of the L-A ELECTRIC EMPLOYEE BENEFIT TRUST, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

MEMORANDUM OPINION AND ORDER

Now before the Court are dispositive motions by both sides: Defendants seek dismissal of the complaint [DE 14] and the first amended complaint [DE 33], while Plaintiffs ask that the case be remanded back to the Allen Superior Court [DE 19]. As of October 24, 2011, both motions are fully briefed and ripe for adjudication [DE 15, 20, 30, 32, 35, 36, 37]. For the reasons detailed below, the Court holds that none of the claims in the original or first amended complaints fall "within the scope of Section 502(a)" of the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and thus that this case was not properly removed because the Court does not have original subject-matter jurisdiction. Therefore, the Court remands the case to the Allen Superior Court.

I. Background

In May 27, 2011, Plaintiffs sued L-A Electric, their former employer, in Allen Superior Court, claiming that the company had deducted money from their paychecks without a valid wage assignment and placed some or all of those funds into a trust fund administered by the company's benefit program. *See* DE 1. In Count 1, Plaintiffs alleged that L-A Electric violated Indiana Code 22-2-6-2 by deducting the funds. *See id.* ¶¶ 13–20. In Count 2, they alleged that the company, the trust fund, and the benefit program (along with the trustees and administrators) criminally converted the funds in violation of Indiana Code 35-43-4-3(a) by obtaining, possessing, and controlling them without authorization. *See id.* ¶¶ 21–32. Finally, in Count 3, Plaintiffs sought an accounting of all deductions from their wages; in addition, alleging that Defendants "have used some or all of [the deducted] monies for purposes not benefitting Plaintiffs and other employee beneficiaries," Plaintiffs sought an accounting of all transfers into the trust and the uses of all monies transferred into the trust, and, if the accounting reveals improper use or diversion, damages and attorney's fees and costs. *See id.* ¶¶ 33–39.

Defendants obtained an extension of time to respond to the complaint and then on July 14, removed the case to this Court under 28 U.S.C. § 1441, alleging federal-question jurisdiction under 28 U.S.C. § 1331 because the complaint seeks relief available under ERISA Section 502(a) and is thus subject to the "complete preemption" doctrine of *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987). *See* DE 2. On August 8, Defendants filed a motion to dismiss the case under Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiffs' Indiana state law claims are preempted by ERISA. *See* DE 15. On August 29, Plaintiffs moved to remand the case to state court, arguing that they are not seeking relief available under Section 502(a)

2

and, in any event, that they are not seeking any relief from any ERISA-covered employee benefit plan. *See* DE 20. In support of their motion to remand, Plaintiffs attached several exhibits, including the benefit program document (DE 21-1), the benefit trust agreement (DE 21-2), a 2009 summary annual report for the benefit trust (DE 21-3), a transcript of a May 2010 meeting discussing the benefit trust (DE 21-4), a common construction wage determination for a public works project (DE 21-5), common wage fringe benefit/base pay calculations for Dave Perl (DE 21-6), and an L-A Electric pay stub for Dave Perl from August 2009 (De 21-7). Plaintiffs' brief in support of their motion to remand also responded to Defendants' motion to dismiss, arguing that ERISA does not preempt their Indiana state law claims.

On the same day, Plaintiffs also filed an amended complaint adding three additional counts and seeking "to make clear" that Plaintiffs intended to assert their claims in the original three counts "only with respect to non-ERISA benefits and rights." DE 20 at 5; *see* DE 18 ¶ 14. The amended complaint re-alleges the original three counts as Counts 4–6 (collectively the "unlawful deduction claims") to "clarify" that Plaintiffs are bringing these claims only regarding deductions for "non-Plan" benefits which they argue are not ERISA plans and therefore involve "non-ERISA deductions" and "non-ERISA monies." *See id.* ¶¶ 53–77. These "non-Plan" benefits include the vacation, holiday, work clothing, and apprenticeship and training benefits. *See* DE 21-1 at 5; DE 1 at 10.  The benefit program distinguishes between these "non-Plan" benefits, which it characterizes as not being employee welfare benefit plans under ERISA, from "Plan" benefits. The "Plan" benefits include health, life, and short-term disability insurance, as well as 401(k) retirement benefits, and are designated as ERISA employee benefit plans and afforded the full panoply of ERISA protections.  "Plan" benefits are paid directly from the

3

benefits trust fund, where as "non-Plan" benefits are paid directly by L-A Electric and reimbursed by the trust fund, to the extent funds are available. *See* DE 21-2 at 8–9; DE 21-1 at 9.

The new Count 1 alleges that L-A Electric failed to pay Plaintiffs the full amount of wages and fringe benefits required by Indiana Code 22-2-5-2—*i.e.*, the "common construction wage"—for "public work" construction projects. *See* DE 18 ¶¶ 24–32. Count 2 alleges that L-A Electric, the benefit fund, and the trust committed criminal conversion by exercising unauthorized control over the common construction wage amounts not paid to Plaintiffs. *See id.* ¶¶ 33–45. And Count 3 seeks an accounting of all common construction wage amounts, including wages and fringe benefits, to which Plaintiffs were entitled, and seeks restoration of any improperly diverted amounts, compensatory damages, and attorney's fees and costs. *See id.* ¶¶ 46–52. The three new claims (collectively, the "Common Construction Wage Act claims") do not distinguish between fringe benefit or wage amounts paid into ERISA and non-ERISA plans.

On September 29, Defendants filed a single brief as a reply in support of their motion to dismiss the original complaint, a motion to dismiss the first amended complaint, and a response in opposition to Plaintiffs' motion to remand. *See* DE 32. In their brief, Defendants argue that removal jurisdiction was proper at the time of removal, based on the original complaint, and that the Court should at the very least exercise supplemental jurisdiction over the amended complaint. Moreover, they argue that the amended complaint does not cure the ERISA preemption issues because the "non-Plan" benefits are covered by ERISA or at the very least involve an ERISA-covered trust fund. On October 13, Plaintiffs filed two separate briefs: first, a reply in support of their motion to remand, arguing that even if their complaint involves ERISA benefit plans, they are not completely preempted because they are not seeking ERISA relief;

second, a response to Defendants' motion to dismiss the amended complaint, arguing that the state law claims are not preempted by ERISA. On October 24, Defendants replied in support of their motion to dismiss the amended complaint.

## II.  Analysis

Removal under 28 U.S.C. § 1441 is only proper if this Court has original jurisdiction over the action. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). And although it is Plaintiffs' who have moved to remand the case, it is Defendants' burden to show that removal was proper.  *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2007); *Doe v. Allied Signal, Inc.*, 985 F.2d, 908, 911 (7th Cir. 1993). Defendants seek to meet that burden by arguing that the Court has federal-question jurisdiction, and thus that removal was proper, under the doctrine of "complete preemption." The Court will first outline what is needed to establish federal-question jurisdiction under the "complete preemption" doctrine as applied to ERISA. The Court will then proceed to consider each of the claims in the complaints to determine whether any one of those claims is subject to "complete preemption." And although removal was only proper in the first instance if the original complaint could have been brought in federal court, the Court would have jurisdiction over the amended complaint if it independently establishes original federal jurisdiction. *See, e.g.*, *Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 185–86 (7th Cir. 1984) (voluntary addition of federal claims in amended complaint provided federal question jurisdiction). Moreover, addressing only the original complaint and remanding on that basis would invite another, unnecessary, removal if Plaintiffs proceeded on their amended complaint in state court. The Court will therefore examine the claims in both the original and amended complaint.  Because the Court ultimately concludes that none of the claims are

completely preempted, and there is no other basis for federal jurisdiction, the Court does not have subject matter jurisdiction to reach Defendants' motion to dismiss and must instead remand the case back to state court.

A.      **Explanation of "Complete Preemption"**

Removal of a case from state court to federal court under 28 U.S.C. § 1441 is only proper when the federal court would have had original jurisdiction over the case in the first instance. *See Caterpillar*, 482 U.S. at 392.  Because the parties to this suit are all citizens of Indiana, there is no dispute that if the Court has jurisdiction over this case it must be federal question jurisdiction. In other words, the case must arise "under the Constitution, laws, or treaties of the Untied States." 28 U.S.C. § 1331. And, generally speaking, it is the plaintiff's complaint that determines whether federal-question jurisdiction exists, for "[i]t is long-settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. at 63. Thus, it is equally well established that a defendant cannot remove a case to federal court "simply by asserting a federal question in his responsive pleading." *Rice v. Panchal*, 65 F.3d 637, 639 (7th Cir. 1995).

While a defensive assertion of federal preemption does not permit removal of a case because the federal question does not appear on the face of the well-pleaded complaint, there is an exception "where Congress has completely preempted a given area of state law." *Lister v. Stark*, 890 F.2d 941, 943 (7th Cir. 1989). The Supreme Court first applied this exception to permit removal to federal court of claims within the scope of Section 301 of the Labor Management Relations Act, even where the state claims did not mention the federal statute, in *Avco Corp. v. Aero Lodge No. 735, etc.*, 390 U.S. 557, 560 (1968), and later extended the

doctrine to claims within the scope of ERISA's civil enforcement mechanism, Section 502(a), in *Taylor*, 481 U.S. at 63.

Confusingly, although the doctrine is labeled "complete preemption," it is not really a *preemption* doctrine at all, but rather a *jurisdictional* doctrine. *Jass v. Prudential Health Care Plan, Inc.* 88 F.3d 1482, 1487 (7th Cir. 1996); *see also Lehmann v. Brown*, 230 F.3d 916, 919 (7th Cir. 2000) ("The name [complete preemption] misleads because, when federal law occupies the field (as in labor law), *every* claim arises under federal law."). This should not be (although it frequently is) confused with defensive "conflict preemption" under ERISA Section 514(a), which provides that state laws are superseded "insofar as they . . . relate to any employee benefit plan" covered by ERISA. *See Jass*, 88 F.3d at 1487–88. The effect of complete preemption, rather, is that "to the extent that Congress has displaced a plaintiff's state law claim" the claim is "properly 'recharacterized' as a complaint arising under federal law." *Id.* (quoting *Rice*, 65 F.3d at 640 n.2). Moreover, because complete preemption arises whenever "the actual nature of the complaint is federal," and may not be defeated by artful pleading, the Court may "look beyond the face of the complaint to determine whether a plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of state law." *Id.* (quoting *Burda v. M. Ecker Co.*, 954 F.2d 434, 438 (7th Cir. 1992)). In other words, although a plaintiff does not intend to assert a federal ERISA claim, and the complaint does not mention any basis for federal jurisdiction, the complaint nevertheless arises under ERISA and confers federal-question jurisdiction.

Thus, federal-question jurisdiction on the basis of "complete preemption" turns on whether any of the claims in the complaint are within the scope of Section 502(a). There are four basic types of claims that a participant or beneficiary can bring under Section 502(a): (1) to

recover benefits due, enforce his rights, or clarify future benefits under the terms of the plan, *see* 29 U.S.C. § 1132(a)(1)(B); (2) for a breach of fiduciary duty, to recover loses by the plan, restore profits made by the breach fiduciary, or other equitable or remedial relief, *see id.* §§ 1132(a)(2), 1109(a); (3) to enjoin any act violating the statute or the plan and obtain appropriate equitable relief to redress the violation or enforce the statute or the plan, *see id.* § 1132(a)(3); and (4) for appropriate relief if a pension plan administrator fails to provide certain required information, *see id.* § 1132(a)(4). Moreover, the Seventh Circuit has found three factors relevant to determining whether an ostensibly state-law-based claim is within the scope of Section 502(a): "(1) whether the plaintiff is eligible to bring a claim under [§ 502(a)]; (2) whether the plaintiff's cause of action falls within the scope of an ERISA provision that the plaintiff can enforce via § 502)(a); and (3) whether the plaintiff's state law claim cannot be resolved without an interpretation of the contract governed by federal law." *Jass*, 88 F.2d at 1487 (quoting *Rice*, 65 F.3d at 641, 644).

Ostensibly state-law claims may be recharacterized as ERISA claims regardless of the form they take if they are really asserting a claim within the scope of Section 502(a). For example, in *Taylor*, the Supreme Court held that the plaintiffs' state law claims for breach of a benefits contract, retaliatory discharge, and unlawful termination of disability benefits really fell within the scope of Section 502 and was completely preempted. 481 U.S. at 67. And in *Jass*, the Seventh Circuit recharacterized a medical malpractice claim against a utilization review manger for denying insurance benefits as a claim "within the scope of Section 502(a)" that ERISA benefits were unlawfully withheld. 88 F.3d at 1482.

Finally, the Court notes the parties spend considerable time in their briefs debating

whether the "non-Plan" benefits are governed by ERISA (notwithstanding language in the program documents to the contrary) or whether their inclusion in a multi-benefit program brings them under ERISA. *See generally Kemp v. Int'l Business Machines Corp.*, 109 F.3d 708, 710 (11th Cir. 1997). It is certainly true that "the existence of an 'ERISA-governed plan' is an essential precursor to federal jurisdiction." *See Cvelbar v. CBI Illinois Inc.*, 106 F.3d 1368, 1373 (7th Cir. 1992) (citations omitted). And whether particular plans fall outside of ERISA may ultimately play a significant role in determining whether particular state law claims are subject to defensive, conflict preemption. But the Court need not wade into this murky area of law for two reasons. First, at least some of the claims in both the original and amended complaints (specifically, the accounting claim in Count 3 of both complaints) potentially involve "Plan" benefits, which are indisputably governed by ERISA. That means that the Court must, in any event, determine whether any of the claims potentially touching on those ERISA benefits fall within the scope of Section 502(a). Second, because the Court concludes that none of the claims do fall within the scope of Section 502(a), the Court lacks subject-matter jurisdiction regardless of whether the claims relate to or otherwise involve ERISA-governed plans.

B.     **Application of "Complete Preemption"**

Plaintiffs bring two basic claims, each divided into three separate Counts. The first claim, and the only one found in the original complaint, is that their former employer, L-A Electric, deducted monies from their wages without a valid wage assignment, in violation of Indiana law. The second claim, added in the amended complaint, is that Plaintiffs' total compensation (cash wages and fringe benefits combined) for certain public-works construction projects fell short of the wages mandated by the Indiana Common Construction Wage Act. To each of these basic

claims, Plaintiffs add two others: one seeks damages for criminal conversion, alleging that L-A Electric, as well as the benefits program, the trust fund, and the administrators and trustees, knowingly or intentionally exercised unlawful control over the deducted monies and unpaid wages; the other seeks an accounting of all deducted monies and unpaid wages, a restoration of those monies, and consequential damages. Because they are so intertwined, the Court will consider how "complete preemption" applies to each of the basic claims together with the associated criminal conversion claim. The accounting claims require a separate analysis, however, because they arguably allege an entirely separate claim for a breach of fiduciary duty.

     *1.*     *The Unlawful Deduction Claims*

The central claim in Plaintiffs' original complaint is the allegation that some or all of the monies deducted from their paychecks was in violation of Indiana Code 22-2-6-2 because the deductions were made without a valid wage assignment and not for a purpose permitted under that statute. Plaintiffs second claim, closely related to the unlawful deduction claim, alleges that because the monies were deducted unlawfully, L-A Electric, the benefits program, and the trust fund all knowingly exerted "unauthorized control" over the monies, and thus criminally converted the monies to their own use in violation of Indiana Code 35-43-4-3. In their first amended complaint, Plaintiffs alter these allegations (now in Counts 4–6) to limit their claims to deductions made for "non-Plan" benefits, including vacation and sick pay, work clothing, and the apprenticeship and training program. The express purpose of this amendment is to clarify that Plaintiffs are not alleging that any money that was ultimately destined for an ERISA-

covered plan was unlawfully deducted from their paychecks.[1]

Applying the three factors set out in *Rice* and *Jass*, the Court concludes that the first two unlawful deduction counts cannot be recharacterized as claims under ERISA Section 502, regardless of whether the underlying plans are covered by ERISA. The first factor—whether Plaintiffs are eligible to bring claims under Section 502—cuts in favor of complete preemption. *See Jass*, 88 F.2d at 1487. As former employees, Plaintiffs would certainly be able to bring a claim under Section 502(a)(1)(B) had they been denied benefits from ERISA-covered plans. They may also be able to bring certain claims for breach of fiduciary duty under Section 502(a)(2) if they still have a vested interest in any plan benefits—such as 401(k) benefits—notwithstanding their separation from L-A Electric. *See LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 256 (2008) (holding that participants in 401(k) plan may recover for fiduciary breaches that impair value of plan assets in participants' individual accounts); *Harzewski v. Guidant Corp.*, 489 F.3d 799, 807 (7th Cir. 2007) (former employees have "standing" to bring breach of fiduciary claims for devalued individual 401(k) accounts even after they have retired and cashed out the benefits). Finally, they may be able to obtain equitable relief under Section 502(a)(3)(B) to redress any harms caused by acts that violated ERISA or the ERISA-covered plans.

But although the fact that Plaintiffs might be able to bring claims under Section 502(a) is certainly relevant to the complete preemption analysis, it is not dispositive of the issue, and the

---

[1] Defendants suggest that Plaintiffs' own evidence belies these allegations because the pay stub for Dave Perl does not indicate any deductions for non-ERISA benefits. *See* DE 21-7 at 2. That may be (although the Court notes that Perl is not the only plaintiff and Plaintiffs may take issue with Defendants' characterization of the deductions). But, in any event, that is a question of the merits that the Court cannot consider without subject matter jurisdiction

second and third *Jass* factors weigh against complete preemption. Perhaps Plaintiffs could have brought claims within the scope of Section 502(a), by alleging that the deductions at issue violated ERISA provisions or the terms of the ERISA-covered plans or that they did not receive the benefits for which the deductions were supposed to pay. But they have not done so. The complaint nowhere alleges that Plaintiffs did not receive benefits to which they were entitled under and ERISA plan, or that the deductions from their wages did not comply with the terns of an ERISA plan or the statute or regulations. Rather, Plaintiffs have alleged that the deductions violated an Indiana law governing wage deductions. Determining whether the deductions from Plaintiffs' wages violated Indiana Code 22-2-6-2, or whether L-A Electric or the downstream recipients of those deductions committed criminal conversion under Indiana Code 35-43-4-3 by knowingly or intentionally converting the monies to their own use, does not require an interpretation of the ERISA plans: whether or not the deductions complied with the plan is immaterial to the question of whether the deductions conformed to Indiana Code 22-2-6-2. To be sure, Indiana Code 22-2-6-2 may be subject to defensive, *conflict* preemption to the extent that it places additional administrative requirements on ERISA plans, but that question is not properly before this Court unless subject-matter jurisdiction is established.

      Other district courts in the Seventh Circuit have confronted similar questions. First, in *Nagel v. Chukerman Packaging, Ltd.*, 19 F. Supp. 2d 826, 829 (N.D. Ill. 1998), a district court in the Northern District of Illinois considered whether claims of unlawful deductions under a similar Illinois law were subject to complete preemption. There, the plaintiffs filed a complaint in Illinois state court alleging that their employer had initially reimbursed them for medical expenses under a medical expense reimbursement plan, but had later recovered certain

reimbursements by deducting monies from the plaintiffs' wages, without the plaintiffs' authorizations. *Id.* at 828. This act, plaintiffs argued, violated the Illinois Wage Payment and Collection Act, which prohibits unauthorized wage deductions. *Id.* at 827. The defendant removed the case to federal court. The court considered the *Jass* factors and concluded that the first two factors favored preemption because the plaintiffs were participants in an ERISA plan and the deductions they were seeking to recover were benefits under that plan. *Id.* at 828. But the Court held that there was no complete preemption because the state law claims could be decided without any reference to the plan documents: the question was simply whether the defendant had obtained the authorization required by Illinois law before deducting monies from the plaintiffs' wages. *Id.* at 829.

Then, a few years later, another decision from the Northern District of Illinois resolved a similar issue the other way, distinguishing *Nagel* on the facts. In *Andersen v. Daimler Chrysler*, No. 04 C 50345, 2004 WL 2260633 (N.D. Ill., Oct. 4, 2004), the plaintiff claimed that his employer had deducted money from his wages to recover an alleged overpayment of benefits without his authorization in violation of the Illinois Wage Payment and Collection Act. *Id.* at *1. The defendant removed the case, and the plaintiff argued that his case was identical to *Nagel* and that the court lacked subject matter jurisdiction because the state law claims were not completely preempted. *Id.* The court agreed that the case resembled *Nagel* in that the plaintiff was eligible to bring an ERISA claim and that the claims involved disputed benefits under ERISA plans. *Id.* But the court found that the plaintiff's claim required an interpretation of the benefits plan and distinguished *Nagel* on the grounds that *Nagel* did not indicate that the plan at issue specifically authorized the collection of overpayments via wage deductions. *Id.*

In this case, unlike in *Nagel* or *Andersen*, the second *Jass* factor does not support complete preemption: as the Court has already noted, the underlying unlawful deduction claims do not involve a dispute over what benefits are payable under the plan. Moreover, at least in this case, the state law claims do not depend on an interpretation of the plan documents because Plaintiffs need not show that the deductions violated ERISA to show that they violated state law. *See Nagel*, 19 F. Supp. 2d at 829. To reiterate the conclusion above: the claim asserted by Plaintiffs is not that the deductions violated ERISA or the plan documents, but that they violated state law. It may be that enrollment procedures under an ERISA plan satisfies state wage payment laws, or that such laws are preempted to the extent that they impose additional administrative burdens on ERISA plans. *But see Albin v. Qwest Communications Corp.*, 194 F. Supp. 2d 1138, 1145 (D.Or. 2002) ("[T]his court concludes that Oregon law barring unauthorized deductions from paychecks by employers does not "relate to" the Plan."). But that does not mean that the state law claims require an interpretation of plan documents, or that the claims are properly recharacterized as claims under Section 502(a) of ERISA.

    2.    *The Common Construction Wage Claims*

Plaintiffs' amended complaint asserts additional claims that L-A Electric failed to pay Plaintiffs the common construction wage mandated by law for work done on public projects (Count 1) and that L-A Electric, the benefit program, the trust fund, and the administrators and trustees, criminally converted the unpaid wages to which Plaintiffs were entitled by Indiana law (Count 2). These common wage act claims, however, are no more susceptible to recharacterization as ERISA claims (and therefore complete preemption) than the unlawful deduction claims.

Just as above, the first *Jass* factor here points in favor of complete preemption. Plaintiffs are (or were) plan participants and could under some circumstances assert claims for benefits, breach of fiduciary duty, or other equitable relief under Section 502(a).  *See Jass*, 88 F.2d at 1487. But the second and third factors again weigh against complete preemption. If Plaintiffs asserted that they did not receive benefits to which they were entitled under ERISA plans and that the failure to pay those ERSIA benefits caused the shortfall in the required common construction wage, those claims would indeed be Section 502(a)(1)(B) claims in disguise. But there is no indication in the complaint that this is the nature of Plaintiffs' claims. Rather, they simply allege that "L-A Electric failed to pay Plaintiffs the full amount of the total common construction wage scale of wages, including wages and fringe benefits" to which Plaintiffs were entitled under Indiana law. Not only is there no mention of entitlement to additional ERISA benefits, but the resolution of Plaintiffs' claims will not require any interpretation of the plan documents: the claims turn not on whether fringe benefits were paid according to the plan documents but whether the fringe benefits (however they were calculated) and the cash wages, when totaled, conformed to the required wage scale.

The Seventh Circuit has not weighed in on the relationship between prevailing wage laws and ERISA, but other federal appellate courts have, and have concluded that most prevailing wage laws are not preempted *at all*—much less completely preempted as within the scope of Section 502(a). Claims under such laws do not "relate to" or have a "connection with" ERISA plans where the prevailing wage laws do not require any particular level of ERISA benefits. *See Assoc. Builders and Contractors, Saginaw Valley Area Chapter v. Perry*, 115 F.3d 386, 391–93 (6th Cir. 1997) (holding that a Michigan prevailing wage statute that did not require certain level

15

of ERISA benefits was not preempted)*; Burgio & Campofelice, Inc. v. N.Y. State Dept. of Labor*, 107 F.3d 1000, 1008 (2d Cir. 1997) (holding that New York State's "benefit neutral" prevailing wage law was not preempted by ERISA); *WSB Electric, Inc. v. Curry*, 88 F.3d 788 (9th Cir. 1996) (holding that a "two-tier" prevailing wage law requiring public works contractors to pay a prevailing wage consisting of cash wages and employer contributions to benefit plans was not preempted by ERISA); *Minn. Chapter of Assoc. Builders and Contractors, Inc. v. Minn. Dept. of Labor and Industry*, 47 F.3d 975 (8th Cir. 1995) (holding that a prevailing wage law allowing payment of the total amount in any combination of cash wages and benefits was not preempted by ERISA). Indeed, although it is certainly not binding on this Court, the Court of Appeals of Indiana has thoroughly and persuasively considered ERISA's preemptive effect on the Indiana Common Construction Wage Act at issue in this case and held that the statute is not preempted by ERISA because it is benefit-neutral. *See Burgess v. E.L.C. Elec., Inc.*, 825 N.E.2d 1, 10–14 (Ind. App. 2005). Further, employing reasoning similar to this Court's reasoning above, the *Burgess* court held that claims under the statute are not preempted where the alleged underpayment of wages does not turn on whether benefits were properly paid under an ERISA plan. *Id.* at 6–9. The Court agrees with this persuasive precedent that Common Construction Wage Act claims are not completely preempted by ERISA unless the resolution of the claims depends on a determination that claimants were improperly denied particular benefits under an ERISA plan. Plaintiffs have disclaimed any such contention at this point, so it appears that such a determination need not be made in this case.

    3.    *The Accounting Claims*

Finally, the Court turns to what is perhaps the most difficult issue in this case:

Defendants' argument that Plaintiffs could have brought a claim for breach of fiduciary duty under Section 502(a)(2) based on their allegation in Count 3 of the original complaint and Counts 3 and 6 in the first amended complaint (the accounting claims) that L-A Electric, the benefits program, the trust fund, and the administrators and trustees "used some or all of [the unlawfully deducted monies and unpaid wages] for purposes not benefitting Plaintiffs and the other employee beneficiaries of the Program and the Trust." DE 1, ¶ 38. Defendants argue that these allegations are "akin to . . . an ERISA Section 502(a)(2) cause of action for breach of fiduciary duty." If Defendant is correct that what Plaintiffs are seeking is really relief for a breach of fiduciary duty by an ERISA fiduciary under Section 502(a)(2), jurisdiction is not only proper in federal court but (unlike a claim for benefits under Section 502(a)(1)(B)) exclusive. *See* 29 U.S.C. § 1032(e).[2] But, again, although the fact that Plaintiffs might have been able to bring a claim under ERISA is relevant to whether a particular claim can be recharacterized as a claim under Section 502(a), it is not dispositive of the issue. The Court must further consider whether the claims actually brought are "within the scope of an ERISA provision that the plaintiff can enforce via § 502(a)" and whether the resolution of the claim requires an interpretation of an ERISA plan. *Jass*, 88 F.3d at 1417.

How these factors play out depends on how Plaintiffs' claims for an accounting are characterized. One way to view the claims is, as Plaintiffs suggest in their briefs, simply as a discovery tool to trace the allegedly converted funds "to the ultimate recipient of the missing funds." DE 35 at 11. In this view, the requests for an accounting is predicated not upon an alleged breach of fiduciary duty but rather upon an alleged violations of Indiana law, and they

---

[2]Notwithstanding the derivative nature of federal jurisdiction on removal from state court, the Court would have jurisdiction over exclusive federal claims under 28 U.S.C. 1441(f).

depend entirely on the underlying allegations. Proof that the deducted monies or unpaid wages were used for purposes not benefitting Plaintiffs would help demonstrate the intent necessary to prove criminal conversion, and the ultimate recipient of the monies might identify other liable parties. Such a claim appears to have little to do with a breach of fiduciary duty claim under Section 502(a)(2). Further, no interpretation of the plan documents would be necessary to resolve such a claim because the question presented is not whether monies were used in violation of the plan, but whether the monies were used for Plaintiffs' (or other plan participants') benefit at all.

On the other hand, a request for an accounting claim is traditionally an equitable remedy predicated upon an alleged breach of fiduciary duties, such as when the beneficiary of a trust seeks an accounting from the trustee showing how he has used the monies held in trust. *See Kimes v. City of Gary*, 66 N.E.2d 888, 893 (Ind.1946) ("A mere creditor as such has no right to compel his debtor to account in equity in the absence of any trust relationship between them."). *But see Vandalia R. Co. v. Stephens*, 78 N.E. 1055, 1055 (Ind. App. 1906) (stating that an action for an accounting implies that "one is responsible to another for moneys or other things, either on the score of contract, or of some fiduciary relation of a public or private nature created by law or otherwise"). In this view, advanced by Defendants, Plaintiffs' allegation that funds deducted from their wages and held in trust have been used for purposes not benefitting Plaintiffs or other employee states an easily recognizable claim that Defendants have breached fiduciary duties they owed Plaintiffs. And since it indisputable (in the original complaint, at least) that some of the wages deducted were ostensibly destined for ERISA-covered benefit plans, Defendants were ERISA fiduciaries. That means that Defendants' fiduciary duties with respect to ERISA monies

were governed by ERISA and that any claim alleging a breach of those fiduciary duties must be brought in federal court; such a claim would clearly be "within the scope of Section 502(a)."

Which characterization is more appropriate—the accounting as a remedy for the alleged violations of the wage payment and common construction wage statutes or as a remedy for an alleged breach of fiduciary duty—is not clear on the face of the complaint. But the Court concludes that adopting the former view over the latter, and thus remanding the case for a lack of subject matter jurisdiction, is the more prudent approach for four reasons. First, when a defendant removes a case to federal court it is his burden to demonstrate that removal was proper, including that the court has jurisdiction of the case, *Oshana*, 472 F.3d at 511; while a close call, Defendants have simply failed to meet their burden.  Second, Plaintiffs are the masters of their own complaint and could hardly have stated more clearly that the purpose of the accounting is to trace the allegedly unlawfully deducted or unpaid monies "to the ultimate recipient of the missing funds," and that they are not alleging, and do not have any evidence to support, a breach of fiduciary duty claim against any Defendants, or that Defendants have violated ERISA in any way; having taken this position at this stage of the litigation to support their motion to remand this case to state court, Plaintiffs should now be estopped from later recharacterizing their allegations to support a breach of fiduciary duty action.  Third, the Court notes that even if Plaintiffs do somehow recharacterize their complaint to assert a breach of fiduciary duty claim against ERISA fiduciaries for the misuse of ERISA-covered monies, Defendants will not be prejudiced; rather, the state court will be required to dismiss those claims because jurisdiction over ERISA breach of fiduciary duty claims lies exclusively in federal court. *See* 29 U.S.C. § 1132(e).

Finally, the Court notes that the speculative and uncertain basis for federal jurisdiction in this case itself warrants erring on the side of caution before allowing the case to proceed in federal court: "Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum. Any doubt regarding jurisdiction should be resolved in favor of the states." *Allied Signal*, 985 F.2d at 911 (citations omitted); *see also* Wright, Miller & Cooper, *Federal Practice & Procedure* § 3721 nn.115-123, § 3739 n.36 (citing a "great many cases . . . for the proposition that if federal subject-matter jurisdiction over a removed case is doubtful, the case should be remanded to state court"). And for good reason: a challenge to the Court's subject matter jurisdiction may be brought at any time by any person (even by the party that has previously removed the case and argued that there was federal jurisdiction), and a later determination that there never was federal subject matter jurisdiction would render nugatory the parties' time and expense litigating before this Court.

### III. Conclusion

Because none of the claims in Plaintiffs' original or amended complaints are within the scope of Section 502(a) and completely preempted by ERISA, the Court does not have original subject matter jurisdiction over this case and removal was not proper. Accordingly, the Court **GRANTS** Plaintiffs' motion to remand and **REMANDS** this case to the Allen Superior Court.

SO ORDERED.

ENTERED:  March 28, 2012

/s/ JON E. DEGUILIO  
Judge  
United States District Court